**KUTAK ROCK LLP**
Michael A. Condyles  (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
1111 East Main Street, Suite 800
Richmond, VA  23219-3500
(804) 644-1700

**K&L GATES LLP**
Jo Ann J. Brighton
Amy P. Williams
214 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-7400

Counsel for Wachovia Bank, National Association

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re                                          ) | |
|                                                ) | |
| **BERMUDA BAY, L.L.C.**                        ) | **Chapter 11** |
|                                                ) | **Jointly Administered** |
|      **Debtors.**     ) | **Case Nos. 09-32133; and 09-32130** |
| _____         ) | |
|                                                ) | |

**WACHOVIA BANK, NATIONAL ASSOCIATION'S**
**OBJECTION TO DEBTORS' DISCLOSURE STATEMENT PURSUANT TO**
**SECTION 1125 OF THE BANKRUPTCY CODE FOR THE PLAN OF**
**REORGANIZATION OF BERMUDA BAY, LLC AND ABKDH, LLC DATED**
**NOVEMBER 3, 2009**

**INTRODUCTION**

Wachovia Bank, National Association (the "Bank"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Plan of Reorganization of Bermuda Bay, LLC and ABKDH, LLC, dated November 3, 2009 (the "Disclosure Statement") and in support of its Objection hereby states as follows:

## BACKGROUND

1. On April 3, 2009 (the "Petition Date"), Bermuda Bay, L.L.C. ("Bermuda Bay") and related entities (the "Debtors") commenced these bankruptcy cases by filing a voluntary petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors are the owners of certain real property and the improvements located thereon in Kill Devil Hills, North Carolina (the "Real Property"). The Real Property consists of a townhouse and condominium development (the "Project") in various stages of construction.

3. A portion of the Project was financed by Wachovia. Pursuant to a Construction Loan Agreement dated July 23, 2004, Wachovia agreed to loan Bermuda Bay funds for the acquisition and development of a portion of the Real Property pursuant to certain promissory notes (the "Notes"). The portion of the Real Property securing the loans provided by Wachovia shall be referenced herein as the "Collateral."

4. As of the Petition Date, Bermuda Bay was in default under the Notes for failing to make payments as required by the terms of the Notes. As a result of Bermuda Bay's defaults under the Notes, Wachovia instructed the trustee under the Deed of Trust to foreclose on the Collateral.

5. A hearing to authorize the foreclosure of Bermuda Bay's interests in the Collateral was set to occur on April 3, 2009 before the Clerk of Superior Court of Dare County, North Carolina. On that day, shortly before the foreclosure hearing was set to begin, Bermuda Bay commenced the bankruptcy case by filing the Petition.

6. As of the Petition Date, the outstanding balance due to Wachovia under the Notes was $10,611,284.91, not including attorneys' fees and costs provided under the terms of the Note.

7. On September 1, 2009, the Bank filed Its Notice of Election Under §1111(b) of the Bankruptcy Code (the "Election").

8. On October 2, 2009, Debtors filed the Plan of Reorganization of Bermuda Bay, L.L.C. and ABKDH, LLC (the "Plan").

9. On November 3, 2009, Debtors filed its Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Plan of Reorganization of Bermuda Bay, L.L.C. and ABKDH, LLC.

10. A hearing on the Disclosure Statement is set before this Court on December 23, 2009 at 2:00 p.m.

## BRIEF STATEMENT

11. The Disclosure Statement should not be approved because: (i) the Disclosure Statement does not contain adequate information as required under 11 U.S.C. § 1125; and (ii) the Plan is not legally confirmable under the provisions of 11 U.S.C. § 1129.

12. In order for a disclosure statement to be approved by the Court, it must be determined that the disclosure statement provides "adequate information" pursuant to 11 U.S.C. § 1125. For purposes of 11 U.S.C. § 1125, the phrase "adequate information" is defined as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

4828-5996-4933.01
4810-7667-1493.2

## SPECIFIC OBJECTIONS TO DISCLOSURE STATEMENT

A. **The Disclosure Statement does not provide "adequate information" as required by 11 U.S.C. § 1125.**

13. The Disclosure Statement should not be approved because the Disclosure Statement does not contain adequate information as required under 11 U.S.C. § 1125.

14. It is within the Court's discretion to determine whether the information contained in a disclosure statement is sufficient to provide the reasonable investor with information with which to make an informed judgment about the plan. *See In re SM 104, Ltd.*, 160 B.R. 202, 227 (Bankr. S.D. Fla. 1993); *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989).

15. Generally, a "disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). Courts have determined that there are certain types of information which should be addressed in a disclosure statement in order to satisfy the disclosure requirements of 11 U.S.C. § 1125. *See In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984); *In re Scioto Valley Mort. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988); *In re A.C. Williams Co.*, 25 B.R. 173 (Bankr. N.D. Ohio 1982); and *In U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996).

16. Further, numerous Bankruptcy Courts have recognized that it is appropriate to consider objections to the confirmation of a plan at a hearing on the adequacy of the disclosure statement. The Court should deny approval of a disclosure statement relating to a proposed plan of reorganization that cannot be confirmed under 11 U.S.C. § 1129. *See In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *accord In re Spanish Lake Assoc.*, 92 Bankr. 875, 877 (Bankr. E.D. Mo. 1988); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

17. Instead of providing "adequate information" as required under 11 U.S.C. § 1125, the Disclosure Statement omits material facts and information necessary to formulate an opinion about the Debtors' proposed Plan.

18. Based on the prior hearings conducted in this case, a primary component regarding the proposed reorganization contemplated by the Plan concerns the involvement of a certain timeshare company that the Debtors seek to partner with in connection with the sale of Real Property as timeshares ("Timeshare Partner"). Despite the critical role the Timeshare Partner maintains in the success and feasibility of the Plan, no information is contained in the Disclosure Statement that sets forth the actions to be taken by the Timeshare Partner, its role in the Project, the terms and conditions under which it will be involved or even the necessary background, creditworthiness, experience and qualifications required to evaluate Timeshare Partner's intended role.[1]

19. The Plan Implementation and Financial Information section (Section VII, page 21) of the Disclosure Statement and its accompanying exhibits are confusing and fail to provide discernible information regarding the means by which the Plan will implemented, debt will be repaid and new debt incurred. The primary information contained in the Disclosure Statement addressing the implementation of the Plan and the proposed generation of the required revenue to enact the Plan concerns a reference to certain projections that are attached as an exhibit. No

---

[1] It has been testified to in prior hearings that Bermuda Bay would be one of a few resorts marketed by the Timeshare Partner that are not owned by the Timeshare Partner or a Timeshare Partner controlled entity, and that this is a new line of business for the Timeshare Partner (the Timeshare Partner's letter of intent states that it has been in this line of business only since July, 2009). A hypothetical investor would certainly be hesitant to provide secured financing in a program that has no established track record, and would want to review revenue figures or projections generated by the program on a project by project basis. Furthermore, a hypothetical investor would want to know whether the Timeshare Partner has experience with an existing "whole ownership" project being converted in part to interval ownership and how the fractional interests could be administered in tandem with the wholly owned units. For example, what right would the time share entity have to utilize common elements of the condominium, which are devoted to the use of all owners, with respect to services provided to a subset of the owners?

discussion or analysis is provided in the Disclosure Statement of the projections, other than a review of the existing categories without any explanation of the content. A simple review of the projections reflects confusing and unclear information with no explanation of what the projections mean or what is intended to be disclosed and established from their content. Simply stated, there is no clear or discernible information contained in the Disclosure Statement that addresses the proposed means and manner by which creditors will be repaid or an evaluation of the risk factors associated with the proposed repayment.

20.     From what can be determined from the projections that accompany the Disclosure Statement, the projections are based on certain crucial assumptions for which there exists no information or support. For instance, assumptions are made in the projections regarding a proposed level of sales of timeshare units. Depending on the interpretation of the information, possibly as much as 780 timeshare units are projected as being sold the first year in 2010 alone and resulting in total sales of $30,019,480.00. However, no information is provided to support any assumed sale absorption rate, the proposed sales prices or the marketing and means by which such an extraordinary level of sales can be achieved.[2]

21.     The Disclosure Statement also contains an exhibit that purportedly reviews the proposed repayment of existing secured loans, including that of Wachovia. A review of the exhibit, as is the case with respect to the projections, again reflects confusing and uncertain information that does not allow for an understanding of the proposed repayment of existing

---

[2] As has been described in prior hearings and depositions, but not reflected in the Disclosure Statement, the Timeshare Partner markets ownership of points in a system by which an owner of points is given the opportunity to select from the entire pool of properties within the system. However, no explanation is provided regarding how this system works, how timeshare interests will be marketed and sold, the compensation to be received by the Timeshare Partner or the expenses that will be charged against any sales.

loans. Other than a vague reference to the categories of the exhibit purportedly referencing repayment, there is no discussion, review or analysis of what the exhibit means or attempts to establish. As a result, a determination cannot be made from the information provided of how the obligations of the Debtors' will be repaid.[3]

22. Financing is also a crucial component of any reorganization of the Debtors. The Disclosure Statement, however, fails to identify the amount of financing that will be required, despite testimony by the Debtors in various hearings that such amounts may be as much as $25,000,000.00 or more. Since the Debtors will be required to finance most of the purchases of any timeshare units that are sold, the amount of required financing is a critical aspect of its plan. Similarly, the ability of the Debtors to obtain the proposed $600,000.00 in exit financing from a company owned by the wife of Leroy Anderson, the representative of the Debtors, is also a critical element of the plan for which no information is provided. Since Mr. Anderson's spouse and her company are not institutional lenders, additional background information regarding the ability to fund a $600,000.00 loan is needed to adequately understand the ability for the Debtors to meet the obligations under the Plan.

23. Section VI B of the Disclosure Statement sets forth release fees to be paid to Wachovia on a per building unit basis for release of the lien on its collateral, but it does not give a release fee amount for Wachovia's Hamilton Cay Collateral, because "it is anticipated that the Wachovia Secured Claim will be paid in full prior to the sale of any VOI unit from Wachovia's Collateral in Hamilton Cay." At the hearing conducted on December 10, 2009 on the Debtors' motion to extend the automatic stay, in defense of Wachovia's objection, just as the Debtors

---

[3] For instance, "Resort Fees" is a vaguely defined term contained in the Plan to describe a source of payment to Wachovia from timeshare sales. The manner for determining the amount of Resort Fees Wachovia would receive under the Disclosure Statement, however, cannot be made based on the definition of the term and the lack information provided.

stated in defense of Wachovia's renewed motion for relief from stay heard on November 18, 2009, the Debtors testified that, despite no specific provisions, that the Plan was intended not to allow for any sale of Wachovia's Collateral consisting of the Hamilton Cay Real Estate as timeshares or otherwise until the obligations owed to Wachovia were paid in full.  In response to this testimony and arguments of Counsel, the Court advised as part of its ruling extending the automatic stay that the language in the Plan should be addressed to reflect the Debtors' agreement that Wachovia's Hamilton Cay Collateral would not be sold until it was repaid. Despite such instructions by the Court and the Debtors' representations at the last two hearings, the Debtors have now stated that it will not agree that Wachovia's Hamilton Cay Collateral will only be sold after it has been paid in full and that it will not modify the Plan to provide for this. As a result, the Disclosure Statement's failure to provide release fees for the Hamilton Cay Collateral in light of the Debtors' refusal to agree not to sell the property until Wachovia's claim is satisfied constitutes a material deficiency for which additional information is required.

24. As reflected on pages 23 and 24 of the Disclosure Statement, a critical component of the Debtors' Plan is that timeshare sales will occur from real estate owned by non-debtor entities (the "Non-Debtor Entities") that are related to the Debtors, but which are not in bankruptcy.  This non-debtor real estate (the "Non-Debtor Real Estate") is subject to deeds of trust for the benefit of Town Bank and, on information and belief, they are in default for failure to make payments due under the loans.  Absent the existence of a separate agreement between Town Bank and the Non-Debtor Entities, Town Bank is free to foreclose on the Non-Debtor Real Estate at any time.  Since the use of the Non-Debtor Real Estate is such a critical component of the Plan, information must be provided describing all agreements with Town Bank or other information must be provided to establish the ability of the Non-Debtor Entities to utilize in an

4828-5996-4933.01
4810-7667-1493.2

uninterrupted manner the Non-Debtor Real Estate for timeshare sales as contemplated by the Plan. The requirement of establishing the uninterrupted use of the Non-Debtor Real Estate is an important component of feasibility and must be disclosed in connection with the Disclosure Statement.

### B.    The Plan is unconfirmable under 11 U.S.C. § 1129.

25.    The Plan is not legally confirmable under numerous provisions of 11 U.S.C. § 1129. Therefore, assuming *arguendo*, that the Disclosure Statement provides adequate information under 11 U.S.C. § 1125, a disclosure statement that describes a plan of reorganization that is unconfirmable on its face should not be approved. *See e.g., In re 266 Washington Assoc.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation.") *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[A]pproval [of a disclosure statement] should be withheld if . . . it is apparent that the plan will not comply with Code § 1129(a) . . ."); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation."). This rule prevents the delay and depletion of estate assets that would otherwise result.

26.    Aside from aspects of the Plan that, among other things, seek to impermissibly substantively consolidate the Debtors and to enjoin the Bank and others from pursuing non-debtor third party guarantors of the Notes, the most apparent demonstration of why the Plan is facially not confirmable concerns its failure to comply with the cramdown provisions of § 1129(b)(2)(A) of the Bankruptcy Code. A review of the Plan reflects that none of the

conditions of § 1129(b)(2)(A) are met with respect to Wachovia, who intends on objecting to the Plan, since: (i) Wachovia will not retain its lien on the Collateral (*See* § 1129(b)(2)(A)(i)); (ii) Wachovia will not be paid the cash from any sale of the Collateral or receive a lien against the proceeds of any such sale (*See* § 1129(b)(2)(A)(ii)); and (iii) Wachovia is not provided the indubitable equivalent of its claim (*See* § 1129(b)(2)(A)(iii)).

27.     In defense of this argument made by Wachovia, at both the December 10, 2009 hearing on the Debtors' motion to extend the automatic stay and the November 18, 2009 hearing on Wachovia's renewed motion for relief from stay, the Debtors represented that they were agreeing, and it was the intention of the language contained in the Plan, that Wachovia would retain its lien on the Hamilton Cay Collateral since the property would not be sold as a timeshare or otherwise until after Wachovia's claim was satisfied in full.  Following the December 10th hearing, however, the Debtors, as previously noted, after having been advised by the Court that the Plan should be amended to address this treatment, have advised they are no longer agreeing not to sell the Hamilton Cay Collateral until after the Wachovia's claim is paid in full, so the Plan will not be amended.  As a result, the Debtors cannot comply with the cramdown provisions of § 1129(b)(2)(A) of the Bankruptcy Code and no basis exists to approve a disclosure statement for a plan that is facially non-confirmable.

**WHEREFORE**, for the foregoing reasons, Wachovia respectfully requests: (i) its objections to the Disclosure Statement be sustained; (ii) the Court deny approval of the Disclosure Statement; and (iii) the Court grant such other and further relief as it deems just and appropriate.

4828-5996-4933.01

4810-7667-1493.2

This the 16th day of December, 2009.

       /s/ Michael A. Condyles
**KUTAK ROCK LLP**
Michael A. Condyles (Va. Bar No. 27807)
Kimberly A. Pierro (Va. Bar No. 71362)
1111 East Main Street, Suite 800
Richmond, Virginia  23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Michael.Condyles@kutakrock.com
Kimberly.Pierro@kutakrock.com

and

Jo Ann J. Brighton
Amy P. Williams
**K&L GATES LLP**
214 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-7400
(704) 353-3165 (facsimile)
joann.brighton@klgates.com
amy.williams@klgates.com

Counsel for Wachovia Bank, National Association

4828-5996-4933.01

4810-7667-1493.2

## CERTIFICATE OF SERVICE

      I hereby certify under penalty of perjury that on December 16, 2009, a true and exact copy of the foregoing Objection was served via this Court's electronic filing system or by first class mail with postage fully prepaid to the following necessary parties:

Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219

Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219

                                            /s/      Michael A. Condyles

4828-5996-4933.01

4810-7667-1493.2