**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re: Bermuda Bay, L.L.C. and<br>      ABKDH, LLC,<br>            Debtors-in-possession | Case Nos. 09-32133 and 09-32130,<br>Jointly administered<br>Chapter 11 |

## MEMORANDUM OPINION AND ORDER

On December 23, 2009, the court held a hearing to consider approval of debtors' disclosure statement filed on November 3, 2009, in these jointly administered bankruptcy cases.[1] The main objective of the hearing was to allow the parties to present their arguments to the court in light of the December 16, 2009, objection to the disclosure statement filed by creditor Wachovia Bank, National Association.

Debtor ABKDH, a Virginia limited liability company, is a real estate development company. ADKDH is the sole member of debtor Bermuda Bay, which is also a Virginia limited liability company. Bermuda Bay is one of several entities that own property commonly referred to as Bermuda Bay Resort ("the Resort") in Kill Devil Hills, North Carolina. In addition to the unrelated third party owners who have purchased individual units at the Resort, there are other non-debtor but related entities that own Resort property along with debtor Bermuda Bay.

The Resort consists of over sixty-six acres located on the Roanoke Sound. The Resort is divided into four separate villages – Cambridge Cove, Hamilton Cay, Devonshire Place and Southampton Mews – in varying stages of construction. There are also 1.44 acres of land with a pool and clubhouse owned by the Bermuda Bay

---

[1] On April 3, 2009, debtors commenced their reorganization cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 16, 2009, the court entered an order authorizing the joint administration of the debtors' cases.

Homeowners Association. A key component of debtors' plan is the sale of Vacation Ownership Interests ("VOI") in the Resort.

Wachovia, the objecting creditor, filed a proof of claim in debtors' chapter 11 cases in the amount of $10,660,169.40, plus attorneys' fees and expenses. That claim was based upon a promissory note dated July 23, 2004, in the original principal amount of $6,000,000.00. Wachovia further based its claim upon a second promissory note dated July 23, 2004, in the original principal amount of $14,613,000.00. Both notes were subsequently modified. It is uncontested that the notes are secured by a portion of the real estate comprising the Resort.

Wachovia's objection to the disclosure statement is the continuation of a dispute between debtors and Wachovia that began early in these cases, which were filed on April 3, 2009. On May 6, 2009, Wachovia moved for relief from the automatic stay. After an evidentiary hearing in August 2009, the court ruled that absent confirmation of a plan within 120 days, or a further extension of time granted by the court, Wachovia would have relief from the automatic stay.

In addition, on August 28, 2009, Wachovia objected to the debtors' motion for an extension of the exclusive period during which the debtors may file and solicit acceptances of a plan. That motion was granted by order entered September 15, 2009. On October 28, 2009, Wachovia renewed its motion for immediate relief from the automatic stay, arguing that the extension of the exclusivity period made it impossible for debtors to confirm a plan within the 120 day period set by the court. That motion was denied by order entered December 24, 2009, and the order extended the protection of the automatic stay until February 5, 2010. Debtors' November 3, 2009, request for judicial mediation of

the issues between debtors and Wachovia was denied by order entered December 18, 2009.

In light of that background, the court considers Wachovia's objection to debtors' disclosure statement.

## WACHOVIA'S ARGUMENTS

The objection to the disclosure statement is two-fold. First, Wachovia argues that the disclosure statement does not provide adequate information. Second, Wachovia argues that the disclosure statement must be disapproved because the debtors' plan is unconfirmable under § 1129 of the Bankruptcy Code, 11 U.S.C. § 1129.

In support of its argument that the information provided in the disclosure statement is inadequate, Wachovia makes the following key points:

1. There is a lack of information regarding the proposed partnership of debtors and Bluegreen Corporation, which will be the entity responsible for marketing the proposed Resort VOI's.

2. The financial information provided in section VII of the disclosure statement is confusing and does not give specifics as to implementation of the plan, thus providing "no clear or discernible information...that addresses the proposed means and manner by which creditors will be repaid or an evaluation of the risk factors associated with the proposed repayment." There is no support for the sales projections contained in the disclosure statement. In addition, there is a disparity between the debtors' representations that Bluegreen sold $11,000,000.00 for the third quarter of 2009 and the amended Exhibit 10 to

the disclosure statement, which shows $7,000,000.00 in Bluegreen revenue. Exhibit 9 shows financing need in 2016 of $65,000,000.00.

3. In addition, there is no clear information as to how the debt to Wachovia will be paid. At hearing, Wachovia argued that the only mandatory payment component is a sentence providing that payment in full must be completed within four years, subject to the possibility of an extension of one year. The payment to Wachovia is calculated by "resort fees" that in turn are generated by sales of units. If there are no sales, no payment would be due to Wachovia until the end of year five. In addition, there is a conflict between two paragraphs of the disclosure statement as to when interest will begin accruing. The disclosure statement does not provide a release fee amount for Wachovia's Hamilton Cay collateral because the plan assumes that the Wachovia claim will be paid in full prior to the sale of any Wachovia collateral. However, debtors have refused to place that provision in the plan or disclosure statement.

4. There is no information as to the financial stability of the company providing the exit financing.

5. The disclosure statement does not contain information about the obligations on the other portions of Resort property not owned by debtors or encumbered by Wachovia. That information is critical in understanding risks inherent in the proposed plan.

In support of its argument that the plan is unconfirmable, Wachovia argues that the plan does not comply with the cramdown provisions of §1129(b)(2)(A) of the

4

Bankruptcy Code. Specifically, Wachovia points out that Wachovia will not retain its lien on its collateral, will not be paid the cash from any sale of its collateral, and will not receive the indubitable equivalent of its claim.

## DISCUSSION

The court will first consider the issue of unconfirmability raised by Wachovia. Wachovia asserts that it will not retain its lien on the collateral. However, Part VI(A)(1) of the amended disclosure statement presented in court on December 23, 2009,[2] provides that "to the extent the Debtors sell any of Wachovia's Collateral, other than VOI Collateral in Hamilton Cay, the Debtors shall pay the net proceeds to Wachovia upon receipt. In addition, the Debtors shall pay to Wachovia, as provided in the Wachovia Loan Documents, 90% of the net proceeds upon receipt after a sale of Wachovia Collateral building pad in Hamilton Cay. The Debtors shall pay to Wachovia $538,920.00 (the floor provided in the Wachovia Loan Documents of $44,910 times 12 units) per building pad for VOI in Hamilton Cay before the sale of any VOI in said pad. Upon receipt of $538,920.00, Wachovia shall be deemed to release its lien on the specific pad."

While the issue of whether the provision above is a complete satisfaction of the obligations of the debtors with respect to Wachovia's collateral may remain a point of controversy, it is clear to the court that this is an issue for confirmation. It is true that it is "well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed." *In re Criimi Mae, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000). However, in this case,

---

[2] The amended disclosure statement has not been filed as of the date of this opinion.

that is far from the case. The conclusion that the creditor is not receiving the required treatment under the plan is not inescapable. Denial of confirmation is not a foregone conclusion. Thus, the court must proceed to consider the arguments raised by Wachovia as to the adequacy of the information contained in the disclosure statement.

In evaluating the sufficiency of information provided in a disclosure statement, the relevant statutory provision is § 1125(b) of the Bankruptcy Code. That section requires that before solicitation of approval or disagreement of a plan of reorganization the disclosure statement must contain adequate information and be approved by the court. 11 U.S.C. § 1125(a)(1) defines "adequate information:"

>  (1)  "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records,…that would enable…a hypothetical investor [typical of the holders of claims or interests in the case] of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; and
>  (2)  "investor typical of holder of claims or interest of the relevant class" means investor having - -
>    (A) a claim or interest of the relevant class;
>    (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and
>    (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

"The determination of whether the disclosure statement has adequate information is made on a case by case basis and is largely within the discretion of the bankruptcy court." *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989). The legislative history of § 1125 confirms that "[p]recisely what constitutes

6

adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interest in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 409 (1977).

Wachovia's first argument, that there is a lack of information with respect to debtors' partnership with Bluegreen Corporation for the purposes of marketing the VOI's, has been obviated by the insertion of information about that corporation in the revised disclosure statement submitted at hearing on December 23, 2009. It is now a simple matter for Wachovia to discover all manner of public information about Bluegreen, that corporation being traded on the New York Stock Exchange. In addition, debtors have provided a great deal of information as to Bluegreen to Wachovia in the course of the previous hearings held in this case. That information may be considered by creditors in making their decision on whether to accept the plan.

Wachovia requests information as to the terms of the agreement between Bluegreen and debtors. Debtors have advised that this agreement has not been finalized. This is a more troubling point of the disclosure statement. However, Exhibit 10 provided to the court at the December 23, 2009, hearing contains correspondence from Bluegreen to debtors stating that the agreement should be finalized by mid-January 2010. The terms of this agreement will be of crucial import to creditors in determining the income flow to debtors that may result from the Bluegreen partnership. Therefore, the disclosure

7

statement must contain a provision as to how the terms of the executed Bluegreen agreement will be timely communicated to creditors.

Wachovia's argument as to the information provided in Part VII of the disclosure statement raises, among other things, a possible disparity in the numbers of income generated in the third quarter of 2009 by Bluegreen. However, that concern is obviated by a close reading of the entire press release attached as Exhibit 10, in which the President of Bluegreen stated that during the third quarter of 2009, "we sold $11.3 million of outside developer inventory and earned a marketing commission of $7.0 million as compared to no such revenues in the third quarter of 2008."

With respect to Wachovia's concern as to Exhibit 9, there has been no evidence that the projections provided by debtors are flawed or that they rely on an inadequate foundation. The court has no reason to suspect the bona fides of debtors in providing these projections. The future financing requirement of debtors, peaking in 2015, is not a disclosure issue in light of the fact that the future needs have been disclosed in Exhibit 9, but rather is a confirmation issue.

Wachovia points out there is no entity named that will be able to provide financing for potential purchasers of the VOI's. In Part VII, debtors recognize that this is an element that must be satisfied if the plan is to succeed. In footnote 2 to Part VII, debtors state that they "have a proposal for receivable financing pending with 12 entities and have been told by 3 such entities that it is very likely that the Resort will receive a commitment and have access to receivable financing by the end of the first quarter in 2010. Debtors have received a letter of intent from one lender to provide receivables, construction and working capital financing." It appears that this footnote describes the

status of the current situation debtors face as to financing. However, further in Part VII, there appears the following language: "Units requiring more than six months of construction time will be financed by drawing from the construction line which is part of the receivables financing. The debtors are currently working on a plan to construct the Hamilton Cay units in a six month time period, but have the financing available should they be required for a build period of longer than six months." That seems to suggest that receivables financing is in place. This discrepancy must be resolved. If, as seems likely, there is no receivables financing in place, debtors must insert into the disclosure statement some provision as to how information as to receivables financing will be timely communicated to creditors.

      Wachovia next argues that Part VI of the disclosure statement is unclear as to how Wachovia is to be paid under the plan. Part VI(B) provides that "Upon Confirmation, Bermuda Bay will retain all Estate Property (other than ABKDH's ownership interests in Bermuda Bay and the Related Entities)…subject to all liens of record as of the Filing Date,…which shall secure to holder of such liens only payments due under this Plan." As amended, section (A)(1) of Part VI provides that the "Wachovia Secured Claim will be secured by the same extent and priority perfected security interests and liens on, in and to the Wachovia Collateral as provided in the Wachovia Loan Documents unless otherwise specifically modified in the Plan." This sentence is unclear as written, and while the court presumes that based on the testimony at hearing and the language of Part VI(B), the sentence is meant to specify that Wachovia will retain its security interest in its collateral (unless modified otherwise in the plan) it cannot find that the purpose is unequivocally achieved. Thus, the sentence should be modified if that is indeed debtors' intent.

Part VI(B) further clarifies the treatment of Wachovia's claim by providing that in the event of the sale of any Wachovia collateral, other than building pads in Hamilton Cay, proceeds derived from that sale will be paid to Wachovia upon receipt. With respect to potential sales of a Wachovia building pad in Hamilton Cay, the disclosure statement provides that Wachovia will be paid pursuant to the Wachovia Loan Documents, as they are defined in the disclosure statement.

Wachovia complains that the provision for the payment of "resort fees" is unclear. Under the plan, quarterly resort fees are to be paid to Wachovia. Resort fees are defined as "payment of (a) 81% of Resort Fee in 2011, (b) 100% of Resort Fee in 2012 and (c) 40% of Resort Fee in 2013 and thereafter." "Resort Fee" is defined as "Amount of funds to be utilized for payment to Wachovia, Towne Bank and on account of the Exit Facility. The amount is based upon sales of VOI less collateral based release fees less all operating costs less a reasonable reserve." Wachovia argues that "sales of VOI" is an unclear term. However, there is no way for the term to be further clarified, given that a definite number for sales of VOI cannot be obtained in advance. The applicable release fees are defined in the disclosure statement. The bottom line is that Wachovia is to be paid a defined percentage each year of the proceeds from the sales of VOI. Should there be no sales, no resort fees would be generated.

Wachovia is concerned that should no resort fees be generated, under the plan as proposed, Wachovia will not receive its payment until the end of year four. It further argues that under that scenario, debtors would be entitled under the provisions of the plan to extend the repayment period for a fifth year. This is an issue for confirmation and is not one of adequacy of information.

The arguments of Wachovia with respect to its treatment under the plan center more on what it will be paid under the plan and not on the adequacy of the information contained in the disclosure statement. However, as mentioned above, the court does find that there is an ambiguity in the sentence "Wachovia Secured Claim will be secured by the same extent and priority perfected security interests and liens on, in and to the Wachovia Collateral as provided in the Wachovia Loan Documents unless otherwise specifically modified in the Plan," and that sentence must be clarified.

With respect to the exit facility, Wachovia has raised the concern that the entity providing the financing is not a known entity and that therefore some information relative thereto should be provided in the disclosure statement. This is a legitimate concern that debtors should address in the disclosure statement in order for creditors to assure themselves that the plan will not fail because of a deficient exit facility. Since evidence in hearings before the court indicates that debtors have already arranged the exit financing and with whom that arrangement was made, it should not be burdensome for debtors to provide information as to the identity and financial stability of the entity providing that financing.

Finally, Wachovia argues that the disclosure statement does not contain information about the obligations on the other portions of Resort not owned by debtors or encumbered by Wachovia. It urges that further information is critical in understanding risks inherent in the proposed plan. The court will not require the debtors to provide further information relative to the loan from Towne Bank, debtors having specified the amounts due and the property secured thereby. However, in light of the multiple nondebtor owners of the Resort, the disclosure statement should disclose whether there

are any potential actions or events relative to those nondebtor owners that might threaten debtors' reorganization. If there are such potential actions or events, they should be identified. If there are none, this should be stated.

In summary, in this case, as in many chapter 11 cases, there are uncertainties as to the future. If there were no uncertainties, perhaps debtors would either have no financial woes or would abandon the enterprise totally. The presence of these uncertainties is the reason for the Bankruptcy Code's requirement that debtors provide sufficient information to enable investors to evaluate a proposed plan; conversely, these uncertainties also hamper the debtors' ability to provide detailed information that covers every future eventuality. Thus, it remains for the court to balance the competing interests of debtors and creditors. While in the end all parties want to fashion a plan of reorganization that will succeed, the court must supervise the process.

The heart of the issue before the court is whether the disclosure statement provides adequate information when the agreements with Bluegreen and a potential receivables financier are not executed or finalized. On the one hand, there is total disclosure (other than as noted above) that these elements are not finalized, but on the other hand, without the terms of the potential agreements, creditors will be hard pressed to accept or evaluate the remaining terms of the plan or the financial projections.

This leaves the court in the position of balancing the needs of creditors and debtors and deciding how long a creditor should be forced to wait while a debtor formulates a plan of reorganization.[3] In this case, almost nine months have passed since

---

[3] The Bankruptcy Code gives some guidance in § 1121. A debtor only may file a plan until after 120 days after the date of the order for relief. 11 U.S.C. § 1121(b). However, if a plan has not been accepted by each class of impaired claims within 180 days of the order for relief, or if a plan has not been proposed within 120 days from the date of the order for relief, any party in interest may file a plan.  11

12

...

the order for relief. The court has already ruled that the automatic stay will remain in effect as to Wachovia until February 5, 2010. On the other hand, it is clear to the court that debtors have worked diligently to achieve a workable plan, and the information contained in Exhibit 10 shows that the VOI contract with Bluegreen is nearing fruition. The court would like to give debtors the opportunity to solicit acceptances or rejections of the plan and have the opportunity to effect a successful reorganization rather than have the case end at the disclosure statement stage. Accordingly, the court will allow the case to proceed to confirmation, but only if the requirements set forth below are fulfilled.

Having considered the arguments presented both supporting and opposing the disclosure statement, the court is persuaded that the disclosure statement should be approved if the modifications below are made. This is not a decision that the court makes lightly, and in doing so, the court has considered the disclosure statement itself, the information available publicly with respect to the various financing entities and the position of the parties. Wachovia, the only objecting creditor whose objections remained at the time of hearing, stated at hearing that through other court hearings in debtors' case, it was aware of other information that was not contained in the disclosure statement. This information may be considered under § 1125(a)(2)(C).

Before the disclosure statement may be approved, debtors must make the following changes:

(a) The disclosure statement must contain some mechanism by which creditors may be apprised of the relevant terms of the Bluegreen partnership and any

---

U.S.C. §1121(c). The 120 day period may be extended for as long as 18 months from the date of the order for relief, and the 180 day period may be extended to as long as 20 months from the date of the order for relief.

    possible receivables financing as far in advance of the plan vote as possible. If there is receivables financing already in place, that should be made clear.

(b) The sentence that the "Wachovia Secured Claim will be secured by the same extent and priority perfected security interests and liens on, in and to the Wachovia Collateral as provided in the Wachovia Loan Documents unless otherwise specifically modified in the Plan" is unclear as written and must be modified.

(c) In light of the multiple nondebtor owners of the Resort, the disclosure statement should disclose whether there are any potential actions or events relative to those nondebtor owners that might threaten debtors' reorganization. If there are such potential actions or events, they must be identified. If there are none, that must be stated.

(d) The debtors must provide information as to the identity and financial stability of the entity providing the exit financing.

    Therefore, IT IS ORDERED that the disclosure statement is DISAPPROVED.

Signed this date: December 31, 2009

                                   /s/ Douglas O. Tice Jr.
                                   DOUGLAS O. TICE JR.
                                   CHIEF JUDGE
                                   UNITED STATES BANKRUPTCY COURT

Copies to:

Bermuda Bay, L.L.C.
30 Bellona Arsenal Road
Midlothian, VA 23113
*Debtor*

ABKDH, LLC
30 Bellona Arsenal Road
Midlothian, VA 23113
*Debtor*

Paula S. Beran
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
*Attorney for Debtors*

W. Clarkson McDow, Jr.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, Va  23219

Michael A. Condyles
Kimberly A. Pierro
1111 East Main Street, Suite 800
Richmond, VA 23219-3500
*Attorneys for Wachovia Bank, National Association*

Adam R. Nelson, Esquire
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
*Attorney for KDHWWTP, LLC*